USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 7/21/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REFAEL KLEIN,

                              Plaintiff,

            v.

STACEY B. AICHER,

                              Defendant.

No.   19-CV-9172 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Refael Klein brings this action against Defendant Stacey B. Aicher, alleging

claims for legal malpractice, tortious interference with doctor-patient confidentiality, breach of

duty, and aiding and abetting a breach of duty under New York law.  Now before the Court are

Defendant's motions to dismiss and for sanctions.  For the following reasons, both motions are

granted.[1]

**BACKGROUND[2]**

At all times relevant to this litigation, Plaintiff was a patient at Northwell Health Garden

City Treatment Center ("Northwell Health"), where he was "receiving cardiac monitoring and

treatment."  Compl. ¶ 2.  Defendant is "Associate Counsel of Catholic Health Services of Long

Island" ("CHSLI").  *Id.* ¶ 3.  CHSLI is "a member of Long Island Patient Information Exchange

---

[1] Defendant also moves in the alternative for summary judgment.  Whether to convert a motion to dismiss to one for summary judgment is within this Court's discretion.  *See Garcha v. City of Beacon*, 351 F. Supp. 2d 213, 216 (S.D.N.Y. 2005).  Because "[n]ormally[] summary judgment is inappropriate before the parties have had opportunity for discovery," *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006), the Court declines to convert the instant motion to one for summary judgment.

[2] The Court draws the following facts in this section from Plaintiff's complaint and accepts them to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

['LIPIX'] – a clearinghouse of confidential patient medical records including those of Northwell Health," *id*., which was "established to provide PHI [protected health information] across multiple healthcare providers on Long Island." *Id.* ¶ 17.

Before this action was filed, Plaintiff was engaged in litigation with Defendant's husband, non-party John Aicher.  In 2018, Mr. Aicher commenced a proceeding (the "Debtor Proceeding") against Plaintiff in state court to recoup "a then-10-year old judgment against Plaintiff." *Id*. ¶¶ 2, 21 (citing *John Aicher, Jr. v. Ralph Klein*, No. 17624-2009 (N.Y. Sup. Ct.)). As part of that Debtor Proceeding, "Mr. Aicher sought to compel Plaintiff's compliance with an Information Subpoena." Compl. ¶ 22.  In June 2019, Plaintiff's counsel – who also represents him in this action – notified Mr. Aicher's counsel that Plaintiff would request an extension of time to comply with that subpoena "on grounds of medical necessity." *Id.* ¶ 23.  This action stems from conduct that allegedly followed Plaintiff's extension request.

Plaintiff alleges – "[u]pon information and belief" – that Mr. Aicher's counsel advised Mr. Aicher about the extension request and Mr. Aicher subsequently informed Defendant – his wife – who "immediately investigated the veracity of Plaintiff's purported medical excuse." *Id.* ¶ 24.  Also "[u]pon information and belief," Plaintiff contends that Defendant "investigated the veracity of Plaintiff's purported medical excuse" by "access[ing] Plaintiff's PHI from Northwell Health – through access afforded her through LIPIX – and then disclosed the contends of the PHI to [Mr. Aicher's counsel] and potentially, other as yet unknown parties." *Id.* ¶ 25.  Plaintiff bases his allegations on a single phone call between his counsel and Mr. Aicher's counsel. According to Plaintiff, Mr. Aicher's counsel objected to the extension request on the grounds "that Plaintiff's purported medical condition was not emergent," stating that "a heart surgery

2

scheduled some 'six weeks in advance' does not reflect an imminent health condition especially when it is only a 'heart valve.'" *Id.* ¶ 26.

On October 3, 2019, Plaintiff filed this action, alleging that Defendant had "unlawful[ly] use[d] . . . Plaintiff's private medical records to attempt to extract a pecuniary gain for her family" by assisting Mr. Aicher in the Debtor Proceeding. *Id.* ¶ 1. Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. 22. That same day, Defendant filed a motion for sanctions. Dkt. 27. After eight extension requests, Plaintiff opposed both motions. Dkt. 48, 52. The Court now addresses Defendant's two pending motions, both of which are granted.

## DISCUSSION

### I.     Motion to Dismiss

Moving to dismiss this action pursuant to Rule 12(b)(6) and for summary judgment pursuant to Rule 56, Defendant contends that "Plaintiff fails to state a claim under any theory of liability alleged." Def.'s Mot. to Dismiss at 6 (Dkt. 23). In passing, Defendant also notes that there "appears to be a serious jurisdictional deficit" with Plaintiff's complaint because, while "Plaintiff claims in his Complaint that jurisdiction lies under 28 U.S.C. § 1331, . . . he does not allege the infringement of any actionable federal right, or violation of any federal law." *Id.* at 8 n.2.

#### A.  Legal Standard

The Court, "[a]t the outset, . . . ha[s] an independent obligation to determine whether federal jurisdiction exists in this case." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt.*, 692 F.3d 42, 48 (2d Cir. 2012); *see also D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.*,

756 F.3d 151, 161 (2d Cir. 2014) ("Federal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*, even when the parties do not contest the issue.").  "[F]ederal courts are courts of limited jurisdiction," *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000), and thus "[t]he statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332," *Belmont v. JetBlue Airways Corp.*, 401 F. Supp. 3d 348, 353 (E.D.N.Y. 2019).  Plaintiff argues that there is subject matter jurisdiction here pursuant to § 1331, *see* Compl. ¶ 18, which provides federal courts with jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C § 1331; *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) ("[T]he party asserting federal jurisdiction bears the burden of establishing jurisdiction.").[3]

"Whether federal courts have federal question jurisdiction over an action is typically governed by the 'well-pleaded complaint' rule, pursuant to which federal question jurisdiction exists only if 'plaintiff's statement of his own cause of action shows that it is based' on federal law."  *Romano v. Kazacos*, 609 F.3d 512, 518 (2d Cir. 2010) (quoting *Vaden v. Discovery Bank*, 556 U.S. 49, 60 (2009)).  Jurisdiction pursuant to § 1331 is properly invoked when a plaintiff "pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Belmont*, 401 F. Supp. 3d at 353; *see also State of New York v. Shinnecock Indian Nation*, 676 F.3d 133, 138 (2d Cir. 2012) (alterations in original) ("A cause of action raises an issue of federal law only when 'a right or immunity created by the Constitution or laws of the United States . . . [is an] essential [element] of the . . . cause of action.").

---

[3] Plaintiff does not attempt to argue that there is diversity jurisdiction pursuant to § 1332.  Nor could he, as his complaint asserts that both he and Defendant are citizens of New York.  *See* Compl. ¶¶ 9-10.

However, in "a 'special and small category' of cases," there might be federal question jurisdiction over claims that have their "origins in state rather than federal law." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 679 (2006)). In that circumstance, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Rather, "some substantial, disputed question of federal law [must be] a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal. et al.*, 463 U.S. 1, 13 (1983). Accordingly, for a court to have federal jurisdiction over a state law claim, the federal issue must be "(1) necessarily raised, (2) actually disputed, and (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Only "[w]here all four of these requirements are met" is federal jurisdiction proper. *Id.*

## B. Application

Plaintiff's complaint asserts four state law claims for (1) legal malpractice, (2) tortious interference with doctor-patient confidentiality, (3) breach of duty, and (4) aiding and abetting a breach of duty.[4] He does not assert a federal cause of action. In particular, Plaintiff does not bring a claim under the Health Insurance Portability and Accountability Act ("HIPAA") – even

---

[4] Although Plaintiff also includes a cause of action for a declaratory judgment and permanent injunction, *see* Compl. ¶¶ 55-58, that alone does not provide a basis for federal jurisdiction. As the Second Circuit recently explained, "[i]n enacting the Declaratory Judgment Act, 'Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 181 (2d Cir. 2018) (quoting *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). "Therefore, 'if, but for the availability of the declaratory judgment procedure,' there would be no jurisdiction over the issues involved in the suit, then 'jurisdiction is lacking.'" *Leopard Marine & Trading, Ltd.*, 896 F.3d at 181-82 (quoting *Franchise Tax Bd. of State of Cal. Cal.*, 463 U.S. at 16).

though he maintains it was violated – perhaps because such a claim would likely be unavailing.[5] *See* Pl.'s Opp. to Dismiss at 5 (Dkt. 48). Nonetheless, Plaintiff contends there is still federal question jurisdiction because "a review of the HIPAA statute is required to determine the basis for the duty of care and standards of conduct to adjudicate these [state law] claims." *Id.*; *see also* Compl. ¶ 18 ("Plaintiff's state law claims are inextricably borne under HIPAA and require interpretation of HIPAA for their determination."). The Court disagrees. Even if Plaintiff's claims necessarily raise a disputed federal issue, that issue is not substantial nor one that could be resolved without disturbing the federal-state balance.

### 1.  Substantial Federal Issue

"[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prods. v. Darue Eng'r & Mfg.*, 545 U.S. 308, 313 (2005). To determine whether there is a substantial federal issue, a court must look at "the importance of the issue to the federal system as a whole," not simply to the parties in a particular case. *Gunn*, 568 U.S. at 260; *see also Liana Carrier Ltd. v. Pure Biofuels Corp.*, 672 F. App'x 85, 92 (2d Cir. 2016) (explaining that if the "resolution of the issue would be relevant only to these parties, the issue . . . is not substantial enough to trigger federal jurisdiction over [a] fundamentally state law cause of action" (internal citation omitted)). Issues that have "'fact-bound and situation-specific

---

[5] Although the Second Circuit has not directly addressed whether HIPAA provides a private cause of action, courts in this circuit have overwhelmingly concluded that one is unavailable, and the Circuit has indicated that it would likely take a similar view. *See, e.g.*, *Bond v. Conn. Bd. of Nursing*, 622 F. App'x 43, 44 (2d Cir. 2015) ("It is doubtful that HIPAA provides a private cause of action at all[.]"); *Toliver v. City of New York*, No. 19-CV-11834 (CM), 2020 WL 883271, at *5 (S.D.N.Y. Feb. 21, 2020) ("Because HIPAA does not provide a private cause of action allowing an individual suit, Plaintiff cannot state a claim under the HIPAA."); *Gaines v. Nassau Univ. Med Ctr.*, No. 18-CV-2109, 2018 WL 3973015, at *3 (E.D.N.Y. Aug. 16, 2018) ("It is well-established that there is no private right of action under the HIPAA law."); *see also Myers v. Cavallo*, No. 16-CV-107, 2016 WL 909248, at *4 (N.D.N.Y. Feb. 2, 2016) ("[C]ourts have concluded 'overwhelmingly' that a patient does not have a private right of action under HIPAA." (collecting cases)).

effects' are," therefore, "not sufficient to establish federal arising under jurisdiction." *Gunn*, 568 U.S. at 263 (quoting *Empire Healthchoice Assurance, Inc.*, 547 U.S. at 701)).

While Plaintiff is correct that his state law claims likely require some consideration of HIPAA and its ensuing obligations, that is not sufficient to confer federal question jurisdiction here.  Nowhere does Plaintiff contend that this action presents any issue of "importance . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260.  In addition to not alleging a violation of HIPAA (or any other federal law), he also does not make any argument implicating the validity of HIPAA, such as challenging its obligations or legal standard.

Rather, what would – at most – be required here is an application of HIPAA's standard to the facts alleged, specifically as to whether Defendant unlawfully accessed Plaintiff's medical records.  Plaintiff acknowledges as much, arguing that federal question jurisdiction exists because this Court must conduct "a review of the HIPAA statute . . . to determine the basis for the duty of care and standards of conduct to adjudicate these claims."  Pl.'s Opp. to Dismiss at 5. But Plaintiff fails to recognize that "the application of a federal legal standard to private litigants' state law claims" does "not have broad consequences to the federal system or the nation as a whole," which is necessary to confer federal question jurisdiction. *Pritka v. Moore*, 91 F. Supp. 3d 553, 559 (S.D.N.Y. 2015); *see also Barone v. Bausch & Lomb, Inc.*, 372 F. Supp. 3d 141, 150 (E.D.N.Y. 2019) (holding that the application of a federal regulation's standard to facts does not itself trigger federal question jurisdiction); *Dovid v. U.S. Dep't of Agric.*, No. 11-CV-2746 (PAC), 2013 WL 775408, at *12 (S.D.N.Y. Mar. 1, 2013) ("A state law cause of action that requires the interpretation of a federal regulation, by itself, is not sufficiently 'substantial' to create federal jurisdiction.").

*Pritka v. Moore* is instructive here.  In conducting a similar jurisdictional analysis with respect to the Foreign Corrupt Practices Act ("FCPA"), the court first determined that "[t]he critical issues in this case are primarily factual: whether Avon's employees committed acts that violate the FCPA and, if so, whether Defendants caused or permitted these violations."  91 F. Supp. 3d at 559.  The extent of the analysis under the FCPA would thus have involved applying that legal standard to the facts.  *See id.* at 560.  But this, the court concluded, could not alone trigger federal question jurisdiction.  To hold otherwise, it explained, would allow "'arising under' jurisdiction [to] be available in any case premised on state law claims, so long as parties cited a federal statute as providing the legal standard."  *Id.* ("Such a result is particularly problematic in cases such as this, where Congress has declined to grant a private right of action under the federal statute.").

Plaintiff next attempts to argue that the Court's "interpretation of HIPAA has implications beyond the boundaries of New York insofar as similar conduct would give rise to claims under the laws of each of the other states."  Compl. ¶ 18.  This argument is also unavailing.  In *Pritka*, the court addressed a similar assertion that any judicial interpretation of a federal statute "may thereby affect the development of the law" and thus "[w]henever a court applies a given legal standard, that court's opinion could theoretically affect other courts' interpretation of that legal standard."  91 F. Supp. 3d at 560.  The Court agrees with the *Pritka* court's rejection of that conclusion, as the breadth of this argument is inconsistent with the intended limits to federal question jurisdiction.  The Supreme Court has made clear there is federal jurisdiction over state law claims in "only extremely rare exceptions."  *Gunn*, 568 U.S. at 257; *see also NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1019 (2d Cir. 2014) ("[T]he Supreme Court has been sparing in recognizing state law claims fitting this criterion.").

Accordingly, Plaintiff's argument would "swallow up the general rule" that federal question jurisdiction applies in only a narrow category of cases.  *Pritka*, 91 F. Supp. 3d at 560.

Several other district courts have considered similar circumstances – that is, a plaintiff's invocation of federal question jurisdiction over state law claims premised on a HIPAA violation. These courts have concluded that a reference to HIPAA in the complaint or an application of the statute to the facts does not alone confer jurisdiction.  As one court noted, "[i]n similar cases involving allegations of HIPAA violations as part of state law tort claims, other courts have found that the alleged HIPAA violations provided no basis for federal jurisdiction."  *Wroten v. Assocs. for Women's Med.*, No. 15-CV-2441, 2015 WL 5276373, at *2 (E.D. Pa. Sept. 9, 2015) ("[W]hether the Pennsylvania public policy exception to the at-will employment doctrine incorporates some or all of the standards set forth in HIPAA . . . is a question of state law, not federal law."); *see also, e.g.*, *Rittinger v. Davis Clinic et al.*, No. 17-CV-626, 2018 WL 690868, at *2 (S.D. Tex. Feb. 1, 2018) ("Plaintiff's state law claims against Defendants for fraudulent misrepresentation, negligent misrepresentation, violation of the Texas Deceptive Trade Practices Act, negligence and gross negligence, battery, and failure to warn sound firmly in Texas law and do not turn crucially on the application or interpretation of HIPAA."); *In re Anthem, Inc.*, 129 F. Supp. 3d 887, 897 (N.D. Cal. 2015) ("Plaintiff's single reference to HIPAA . . . does not convert Plaintiffs' state law claim for breach of fiduciary duty into a federal cause of action."); *Johnson v. Parker Hughes Clinics*, No. 04-CV-4130, 2005 WL 102968, at *2 (D. Minn. Jan. 13, 2005) (holding that a claim, which "does not seek relief under HIPAA, but rather seeks an order interpreting the statute, . . . is insufficient to confer subject matter jurisdiction").

In sum, Plaintiff's state law claims only require a review of HIPAA's standard and thus demand a purely "fact-bound" analysis.  *Gunn*, 668 U.S. at 263.  "[S]omething more,

demonstrating that the question is significant to the federal system as a whole," is lacking. *Pritka*, 91 F. Supp. 3d at 559.

### 2. Federal-State Balance

Plaintiff's invocation of federal question jurisdiction fails for the additional reason that these claims are not likely "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. The Supreme Court "ha[s] consistently emphasized that, in exploring the outer reaches of § 1331, determinations about federal question jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharm. Inc.*, 478 U.S. at 810. It has also stated that "[g]iven the significance of the assumed congressional determination to preclude federal private remedies, the presence of the federal issue as an element of the state tort is not the kind of adjudication for which jurisdiction would serve congressional purposes and the federal system." *Id.* at 814. This guidance is particularly relevant here, where Plaintiff brings four tort claims.

Two considerations weigh against resolving this action in federal court. First, and most significantly, courts – both in and out of this circuit – have overwhelmingly concluded that HIPAA does not provide a private cause of action.[6] The Supreme Court has established that "the absence of a federal private right of action [i]s evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 318. While not "dispositive," *id.*, the broad consensus that HIPAA does not provide a private cause of action creates a significant concern that finding federal question

---

[6] Although he asserts that "the Second Circuit has not determined th[is] issue," Pl.'s Opp. to Dismiss at 6 n.2, Plaintiff does not address the Circuit's statement in *Bond* that "[i]t is doubtful that HIPAA provides a private cause of action," 622 F. App'x at 44, nor does he provide any support for the contention that it does.

jurisdiction here might "be tantamount to recognizing a private right of action under [HIPAA] and thus risk "disturbing [the] congressionally approved balance of federal and state judicial responsibilities."  *Pritka*, 91 F. Supp. 3d at 560-61 (alterations in original) (citing *Grable*, 545 U.S. at 314, 318).

Second, the propriety of exercising federal question jurisdiction here is cast further in doubt because Plaintiff's state law claims arguably raise difficult issues under New York law.  In alleging legal malpractice, for instance, Plaintiff "acknowledges that the right to a malpractice claim in New York is traditionally limited to those in privity with an attorney through an established attorney-client relationship" and that those facts are not present here.  Compl. ¶ 34. He nonetheless contends that "the special circumstances of the Defendant's role as an attorney for a hospital puts her in a unique exception," which should suffice for privity.  *Id.* ¶ 35.  But whether the facts alleged satisfy this "unique exception" is a matter to be resolved under state law.  In addition, Defendant argues that Plaintiff's claim for tortious interference with doctor-patient confidentiality is "a tort that has [n]ever been recognized under New York law."  Def.'s Mot. to Dismiss at 11.  A New York court is thus best suited to answer these questions.

For the foregoing reasons, this action does not raise a substantial federal question, and reviewing the state law claims would be "[in]consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14.  This action is therefore dismissed for lack of subject matter jurisdiction.

## II.    Motion for Sanctions

The Court next addresses Defendant's motion for sanctions.[7]  Defendant contends that

sanctions are appropriate under Federal Rule of Civil Procedure 11 on five independent grounds:

(1) Plaintiff's claims lack any reasonable evidentiary support; (2) a reasonable inquiry was not

performed before filing the complaint; (3) the claims are not viable as a matter of settled law; (4)

the complaint was brought for an improper purpose; and (5) Plaintiff has unjustifiably refused to

withdraw the complaint.[8]

### A.  Facts Relevant to Defendant's Motion for Sanctions

The following section provides additional facts relevant only to Defendant's sanctions

request.

On August 22, 2019, prior to filing this action, Plaintiff's counsel wrote to Defendant

about his claims.  *See* Dkt. 28, Ex. A (Aug. 22, 2019 Ltr.).  With the letter, he enclosed a

proposed settlement agreement (the "Proposed Agreement"), which was addressed to both her

and her husband, Mr. Aicher.  *See* Dkt. 28, Ex. B (Proposed Settlement Agreement).  The

Proposed Agreement first asserted that Defendant and Mr. Aicher had "knowingly and willingly

conspired to violate the Health Insurance Portability Act of 1996 (as amended) for their own

---

[7] Although the Court lacks subject matter jurisdiction to adjudicate this dispute, it retains the authority to impose sanctions.  *See Chemiakin v. Yefimov*, 932 F.2d 124, 129 (2d Cir. 1991) ("[C]ourts have the power to impose Rule 11 sanctions even when they lack subject matter jurisdiction to adjudicate the merits of a dispute."); *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 219 (E.D.N.Y. 2011) ("[A]lthough the Court is dismissing the action because it lacks subject matter jurisdiction, it still retains 'the power to determine collateral issues, such as the appropriateness of sanctions.'" (quoting *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002)).

[8] Defendant also cites 28 U.S.C. § 1927 and the Court's inherent power as alternative sources of authority to impose sanctions.  *See* Def.'s Mot. for Sanctions at 7 (Dkt. 30).  Because the Court concludes that sanctions are appropriate pursuant to Rule 11, it does not address these alternative arguments.

personal gain." *Id.* It then proposed that in exchange for Mr. Aicher "voluntarily withdraw[ing] all judgment enforcement proceedings against [Plaintiff] and "fil[ing] satisfactions documents of the Judgments and Renewal Judgments stating that each has been satisfied in full," Plaintiff would release any claims that he has against Defendant and Mr. Aicher. *Id.*

Defendant did not respond. Instead, she "immediately reported this alleged HIPAA violation" to her employer. *See* Dkt. 28 ¶ 25 (Decl. of Def.). According to Defendant, her employer conducted an "investigation[, which] revealed . . . that the HIPAA violation alleged by Mr. Klein was unsubstantiated, a finding ultimately confirmed by CHS Information Security team." *Id.* ¶ 26. In particular, the investigation concluded that Defendant "did not have access to any of Mr. Klein's PHI, or any access to any EMR or database in which that information may have been stored," nor was she "credentialed as an authorized user, or as a person authorized to access patient records through the CHS Epic system." *Id.* ¶¶ 27-28.

On September 20, Plaintiff's counsel again wrote to Defendant. *See* Dkt. 28, Ex. C (Sept. 20, 2019 Ltr.). He explained that an "investigation ha[d] revealed that Catholic Health Services of Long Island is a member of Long Island Patient Information Exchange, which as you know, includes Northwell Health" and threatened to "fil[e] a complaint in the Southern District for malpractice and breach of fiduciary duty stemming from the HIPAA violation" if Plaintiff did not respond. *Id.* Defendant did not respond to this letter or to Plaintiff's two subsequent e-mails. *See* Dkt. 28, Ex. D (Sept. 23, 2019 E-Mail); Dkt. 28, Ex. E (Sept. 30, 2019 E-Mail).

Prior to filing the complaint on October 3, 2019, Plaintiff and his counsel purportedly investigated his allegations by performing "an online search[,] which revealed that CHSLI and Northwell Health are both members of the Long Island Patient Information Exchange ('LIPIX'), an electronic Healthcare Information Exchange ('HIE') which is managed through Healthix, Inc.

('Healthix')."  Dkt. 53 ¶ 8 (Decl. of Kerr).  As Plaintiff's counsel explains, "Plaintiff was aware

that Defendant is an attorney and that she is employed at the legal department of [CHSLI]" and

"[b]ecause CHSLI and Northwell Health are both members of Healthix/LIPIX, Plaintiff believed

. . . that Defendant, through her role at CHSLI, unlawfully accessed his confidential medical

records through Healthix without his consent and shared them with [Mr. Aicher's counsel] for

the purpose of advancing her husband's case in which she shares a joint financial interest."  *Id.* ¶

9.  Plaintiff's counsel adds that "the foundation for Plaintiff's belief that Defendant was the

culprit only grew stronger" after Defendant did not respond to their correspondence.  *Id.* ¶ 13.

After the complaint was filed, Defendant hired counsel, who subsequently presented

Plaintiff's counsel with information casting doubt on the veracity of the allegations.  On October

11, Defendant's counsel detailed the factual issues with the complaint.  *See* Dkt. 28, Ex. F (Oct.

11, 2019 Ltr.).  In particular, the letter stated that Defendant "does not have, and never has had,

access to *any* health record database, or any patient's health records – either directly at CHS, or

derivatively at Healthix/LIPIX or Northwell."  *Id.*  It noted that CHSLI had investigated

Plaintiff's allegations and determined that the alleged "HIPAA violation was baseless."  *Id.*  The

letter further noted that "[n]either [Plaintiff's counsel] nor [his] client ever appear to have sought,

or secured, from Northwell or Healthix/LIPIX a certified copy of the 'HIPAA Accounting of

Disclosures' each of those entities is required to provide to its patients," adding that had they

done so, they "would have learned – in unimpeachable fashion – that Stacey Aicher *never*

attempted to access, actually accessed, or was in a position to access Mr. Klein's health records

or his PHI."  *Id.*  In conclusion, remarking on what appeared to be Plaintiff's "effort to 'barter'

[his] pursuit of this claim against [Defendant] for an agreement by her husband John to forego

the collection against Mr. Klein," Plaintiff's counsel warned that the "actions run seriously afoul

of Rule 11." *Id.*  After communications between the parties' counsel ceased, *see* Dkt. 29, Ex. H-U (E-Mails Exchanged Between Counsel), Defendant was served with the complaint on November 27, 2019.  Dkt. 8 (Aff. of Service).

In mid-December, Defendant served Plaintiff with the instant motion for sanctions.  *See* Dkt. 53 ¶ 20.  After Plaintiff did not withdraw the complaint within the 21-day period afforded by Rule 11, Defendant filed the motion.  While "this motion was pending" – which appears to mean after it was served but before it was filed – Plaintiff claims to have further investigated his allegations.  *See* Dkt. 54 ¶ 24 (Decl. of Pl.).  First, according to his counsel, "Plaintiff contacted Northwell Health where he was referred to two compliance officers," who "confirm[ed] that . . . his Northwell Health medical records and data were placed on Healthix."  Dkt. 53 ¶¶ 30-31. Second, Plaintiff requested a "Patient Account Access Log" (the "Access Log") from Healthix – the same information that Defendant's counsel had mentioned was available to Plaintiff in his October 11th letter.  *Id.* ¶ 32.  This Access Log "details which members accessed [Plaintiff's] medical records and when," and corroborates Defendant's assertion that she never accessed Plaintiff's records.  *Id.* ¶ 33.

With this motion for sanctions pending before the Court, counsel for both parties spoke again.  "After weighing several factors affecting this litigation, Plaintiff ultimately offered to withdraw the Complaint in exchange for Defendant's agreement to withdraw this motion."  Dkt. 53 ¶ 22.  Defendant refused to do so.

## B.  Legal Standard

"[A]fter [there is] notice and a reasonable opportunity to respond," a court may "determine[] that Rule 11(b) has been violated" and "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for that violation."  Fed. R.

Civ. P. 11(c)(1).  As is relevant here, Rule 11(b) requires that "[b]y presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "it is not being presented for any improper purpose, such as to harass"; "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b).

"'[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness,' and is not based on the subjective beliefs of the person making the statement."  *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)).  A district court has discretion whether to impose sanctions.  *See Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987).  Upon a determination that sanctions are appropriate, the award "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  "[I]f imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" is permissible.  *Id.*

### C.  Application

As an initial matter, Rule 11's procedural requirements have been satisfied here. Defendant filed "[her] motion for sanctions . . . separately from any other motion," and it "describe[d] the specific conduct that allegedly violates Rule 11(b)."  Fed. R. Civ. P. 11(c)(2).

Defendant also served the motion on Plaintiff and waited the requisite 21 days after service, giving Plaintiff the opportunity to withdraw the complaint before filing it.  *See id*.; *see also* Dkt. 53 ¶ 20.

Moreover, for the reasons that follow, the Court concludes that sanctions are warranted under Rule 11(b).

### 1. Lack of Evidentiary Support For and Limited Inquiry Into Plaintiff's Allegations

Sanctions on Plaintiff are appropriate in light of the tenuous factual basis on which the complaint was filed.  "Rule 11 is designed to insure that allegations made in a complaint drafted by a member of the bar of this Court are supported by a sufficient factual predicate *at the time that the claims are asserted*."  *City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524, 525 (S.D.N.Y. 1985) (emphasis in original).  "In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated."  *Saltz v. City of New York*, 129 F. Supp. 2d 642, 646 (S.D.N.Y. 2001).  For this reason, Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed."  *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998); *see also Abner Realty, Inc. v. Adm'r of GSA*, No. 97-CV-3075 (RWS), 1998 WL 410958, at *4 (S.D.N.Y. July 22, 1998) ("Rule 11 requires that an attorney make a prefiling inquiry to establish reasonable ground to believe that further investigation and discovery will prove his case.").

First, Plaintiff lacked objectively reasonable evidentiary support for his allegations when filing the complaint.  The complaint alleges – solely "[u]pon information and belief" – that after Plaintiff requested an extension in the Debtor Proceeding for medical reasons, Defendant

accessed Plaintiff's medical records from Northwell Health and "disclosed the contents of the PHI to [Mr. Aicher's lawyer] and potentially, other as yet unknown parties." Compl. ¶¶ 24-25. But the complaint itself provides no factual basis for alleging that (1) Mr. Aicher informed Defendant of Plaintiff's extension request; (2) Defendant sought to investigate Plaintiff's medical history; (3) Defendant had access to Plaintiff's medical records – let alone to any CHSLI patient's records – or accessed them; or (4) Defendant discovered any information about Plaintiff's health and disclosed it to Mr. Aicher's counsel. Instead, on the face of the complaint, Plaintiff's allegations are all based on a single conversation between his counsel and Mr. Aicher's counsel regarding the extension request sought in the Debtor Proceeding. *See id*. ¶ 26.

       In his opposition brief, Plaintiff attempts to defend the factual basis for his allegations. He states that the complaint was filed "based upon the fact that (1) [Mr. Aicher's counsel] had knowledge of Plaintiff's confidential PHI for which Plaintiff was being treated at Northwell Health; [and] (2) Defendant has such information available to her through her position as Senior Associate Counsel at CHSLI because CHSLI and Northwell Health are both members of Healthix/LIPIX[.]" Pl.'s Opp. to Sanctions at 6-7 (Dkt. 52). Plaintiff, however, had no objectively reasonable evidence that "Defendant ha[d] such information available to her." *Id.* Plaintiff's sole support for his claims against Defendant are that (1) his counsel and Mr. Aicher's counsel had a conversation – which revealed nothing about Defendant's conduct, and (2) Defendant was a lawyer at a hospital that shared an electronic records system with the hospital where Plaintiff received treatment. Based on this, it was unreasonable to allege that Defendant "ever accessed, attempted to access, or even had the ability to access plaintiff's medical records or PHI, or that she was part of any plot to effect such access." Def.'s Mot. for Sanctions at 11 (Dkt. 30). Plaintiff thus lacked "an objectively reasonable evidentiary basis" to file this

complaint.  *Saltz*, 129 F. Supp. 2d at 646; *see also Wechsler v. Hunt Health Sys., Ltd.*, 216 F.

Supp. 2d 347, 356 (S.D.N.Y. 2002) ("A pleading, motion, or paper violates Rule 11 if it is . . .

factually without foundation, even though not signed in subjective bad faith.").

Second, these facts further establish that neither Plaintiff nor his counsel conducted a

reasonable inquiry into these allegations before filing the complaint.  Plaintiff acknowledges that

the pre-filing inquiry consisted solely of "identif[ying] [that] Defendant was employed by

CHSLI as its Senior Associate Counsel" and "[a]n online search [that] revealed that CHSLI and

Northwell Health are both members of Long Island Patient Information Exchange ('LIPIX'), an

electronic Healthcare Information Exchange ('HIE') which is managed through Healthix, Inc."

Pl.'s Opp. to Sanctions at 2, 7.  As previously discussed, the mere fact that Defendant was

employed by a hospital that shared an electronic records system with another hospital is

insufficient to reasonably allege that Defendant had access to Plaintiff's medical information, let

alone actually accessed Plaintiff's records and shared it with Mr. Aicher's counsel.  Nor does

conducting a single online search, which discovered that two hospitals in the vicinity of one

another use the same electronic records system, "establish [a] reasonable ground to believe that

further investigation and discovery will prove [Plaintiff's] case."  *Abner Realty, Inc.*, 1998 WL

410958, at *4.

The deficiencies in Plaintiff's pre-filing investigation are particularly lacking in light of

what was available to him at the time.  HIPAA gives "an individual . . . a right of access to

inspect and obtain a copy of protected health information about the individual in a designated

record set, for as long as the protected health information is maintained in the designated record

set[.]"  45 C.F.R. § 164.524.  Defendant's counsel made Plaintiff's counsel aware of this

statutory right in his October 11th letter.  *See* Dkt. 28, Ex. F.  And yet Plaintiff did not request

this information until *after* he served the complaint.  *See* Pl.'s Opp. to Sanctions at 5.  With no

reasonable factual support for his claims at the time the complaint was filed, the decision by

Plaintiff and his counsel not to utilize HIPAA to access the very information that could

substantiate his allegations is particularly troubling.  *See Saltz*, 129 F. Supp. 2d at 646 ("[W]hen

an attorney must rely on his client, he should question him thoroughly, not accepted his version

on faith alone.").

On a final note, Defendant also asserts that sanctions are appropriate because Plaintiff

filed this action with the improper motive of forcing Mr. Aicher to settle the Debtor Proceeding.

*See* Def.'s Mot. for Sanctions at 9.  Defendant contends that the Proposed Agreement, which

included a release of claims against Defendant and Mr. Aicher, demonstrates that Plaintiff

"creat[ed] a claim from whole cloth that suggested Ms. Aicher had violated federal law and her

organization's ethical precepts in order to 'trade' relinquishment of that manufactured claim in

exchange for concessions in the [Debtor Proceeding]."  *Id.* at 9.  Disputing this assertion,

Plaintiff explains that he sent the Proposed Agreement "because the two litigations involved the

same households" and "simply believed that his waiving damages for Defendant's unlawful

access of his PHI and his avoiding the cost of this litigation approximately offset the value of

Defendant's husband's enforcement action against him."  Pl.'s Opp. to Sanctions at 15.

"[P]relitigation letters airing grievances and threatening litigation if they are not resolved are

commonplace, sometimes with salutary results, and do not suffice to show an improper purpose

if non frivolous litigation is eventually commenced."  *Sussman v. Bank of Israel*, 56 F.3d 450,

459 (2d Cir. 1995).  The Court does not base its conclusion here solely on this basis.

Nonetheless, this conduct informs the Court's finding that Plaintiff lacked reasonable factual support to bring this action and failed to conduct a proper pre-filing inquiry.[9]

### 2.   Conduct After Filing the Complaint

Plaintiff's post-filing conduct also provides a basis on which to impose sanctions.  Even if a party had "'had a reasonable basis at the time' it filed its initial pleading 'to believe' that its claim was valid, . . . a court may impose sanctions on a party for 'refus[ing] to withdraw' an allegation or claim 'even after it was shown to be inaccurate.'"  *Galin*, 283 F. Supp. 3d at 202.  A plaintiff, therefore, has a "continuing obligation" to ensure that the action has reasonable support and, if not, to withdraw it.  *Id.*

After being served with this motion for sanctions, Plaintiff conducted an additional inquiry into his allegations.  *See* Pl.'s Opp. to Sanctions at 7 (Dkt. 52); Def.'s Reply for Sanctions at 4 (Dkt. 69).  Part of this investigation involved "request[ing] and receiv[ing] a 'Patient Account Access Log' . . . from Healthix," which he has the right to under HIPAA.  Pl.'s Opp. to Sanctions at 5.  The Access Log shows, among other things, when and by whom his medical records were accessed by any member of the Healthix system in 2019 – the relevant period hereto – and did not show access by Defendant.

With her reply brief, Defendant submitted a declaration from Tara O'Brien, an Information Security Operations Manager at CHSLI, who had reviewed the Access Log.  *See* Dkt. 70 (Decl. of O'Brien).  According to O'Brien, the Access Log demonstrates that Plaintiff's

---

[9] Defendant also argues that sanctions are appropriate because "[P]laintiff's claims are unsupported by existing law, and the Complaint provides no reasonable basis to extend or modify the law as it stands."  Def.'s Mot. for Sanctions at 9.  Although filing claims without legal support is another basis to impose sanctions, *see* Fed. R. Civ. P. 11(b)(2), the standard for doing so is "purposefully high, so as not to stifle legal creatively and zealous advocacy."  *Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017).  The Court does not rest its decision on this basis.

claims are meritless in two ways.  First, a "UserName" category identifies the entity or person

requesting and accessing Plaintiff's records.  Every time that Plaintiff's records were accessed

the "UserName" was "NSLIJSDA."  *See* Dkt. 73, Ex. 1 (Unredacted).  According to O'Brien,

"'NSLIJSDA' is ***NOT*** a user affiliated with any facility or provider in [CHSLI's] health system.

Instead, it reflects user access associated with the North Shore Long Island Health System

(Northwell's former name)[.]"  Dkt. 70 ¶¶ 14-15.  Because the Access Log establishes that only

users at Northwell Health, where Plaintiff was receiving treatment, accessed his records in 2019,

this conclusively rules out the possibility that "any CHS user, employee, agent, or representative,

including but not limited to Stacey Aicher" accessed his medical records.  *Id.* ¶ 20 (emphasis

removed).  The Access Log thus demonstrates that Plaintiff's allegations are baseless and that he

knew – or should have known – as much at the time.

Second, Plaintiff contends that "[o]n or about June of 2019," he sought the extension in

the Debtor Proceeding.  Compl. ¶ 23.  The complaint does not specify when Mr. Aicher's

counsel called Plaintiff's counsel to object to the extension, but Plaintiff had already contacted

Mr. Aicher's counsel on August 16, 2019 and Defendant as of August 22, 2019, alleging a

HIPAA violation.  *See* Dkt. 28, Ex. A.  Plaintiff thus appears to base his claim on the allegation

that Defendant accessed his medical records at some point between June 2019 and August 16,

2019.  However, the Access Log reflects that no one accessed Plaintiff's medical records

between May 18, 2019 and August 21, 2019, directly disproving Plaintiff's assertion.  *See* Dkt.

73, Ex. 1; Dkt. 70 ¶¶ 21-22.

And yet, despite this conclusive evidence from the Access Log, Plaintiff has refused to

withdraw his claims against Defendant.  *See Carlton Grp., Ltd. v. Tobin*, No. 02-CV-5065

(SAS), 2003 WL 21782650, at *6 (S.D.N.Y. July 31, 2003) ("Rule 11 sanctions are appropriate

where an attorney or party declines to withdraw a claim 'upon an express request by his or her
adversary after learning that [the claim] was groundless.")  He instead continues to defend his
allegations, even citing the Access Log for support.  It is unclear to the Court on what basis
Plaintiff can reasonably continue to state that during the relevant time period, "the Access Log
reveals that Plaintiff's patient records and other data were accessed by a representative or
representatives of CHSLI on numerous occasions without Plaintiff's consent."  Pl.'s Opp. to
Sanctions at 5.

  Finally, in what appears to be the equivalent of a Hail Mary, Plaintiff now contends that
"whether or not Defendant had log-in privileges or access credentials to any health record
repository or database – both of which she denies – does not squarely answer the question of
whether or not her position at CHSLI as an attorney handling corporate compliance afforded her
the opportunity to access Plaintiff's PHI albeit in some other way – *e.g.*, by requesting someone
with such privileges to access the information for her."  *Id*. at 8-9.  Not only is this conclusory
assertion missing from the complaint, but there is no evidence to support it.  *See* Compl. ¶ 25
(alleging that "Defendant next accessed Plaintiff's PHI from Northwell Health – through access
afford her through LIPIX").

  As such, Plaintiff's continuing refusal to withdraw this action in light of the Access Log
is unsupportable and provides another basis for sanctions.  *See City of Yonkers*, 844 F.2d 42, 49
(2d Cir. 1988) (affirming the imposition of sanctions for a party's refusal to withdraw a claim
until after a motion for summary judgment was briefed).

### 3.  Appropriate Sanctions

  Because the Court concludes that sanctions are warranted in light of Plaintiff's pre- and
post-filing conduct, it must determine what sanctions would be appropriate.  In her motion,

Defendant "requests that the Court direct both an award of attorneys' fees and costs in her favor, as well as an order directing plaintiff to bear the cost of removing references to this baseless claim from the various internet sites where such references are found."  Def.'s Mot. for Sanctions at 24.

An award of attorney's fees and costs is appropriate here.  Defendant seeks all fees and costs "incurred after (at the latest), October 11, 2019 – the date plaintiff's lawyer was placed on notice that his claims were frivolous and should be withdraw," which would then "include all fees and expenses incurred in preparing this sanctions motion, and the related dispositive motion."  Def.'s Reply for Sanctions at 10.  It is well settled that "sanctions may include 'an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.'"  *Galin*, 283 F. Supp. 3d at 204 (quoting Rule 11(c)(4)); *see also Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985) ("[A] federal court may award attorneys' fees . . . pursuant to the dictates of [Rule] 11.").

Defendant's request for attorney's fees and costs as of October 11, 2019 is also reasonable and properly tailored to deter future conduct by Plaintiff and others who are similarly situated.  *See City of Yonkers*, 844 F.2d at 49-50 (concluding that sanctions "ordered for the expense of moving to dismiss" were "limited" and "well within [the district court's] discretion").  As previously explained, Plaintiff filed this action based only on speculation about Defendant's conduct.  Defendant began to incur costs in defending herself as early as October 11 – after the complaint was filed.  She also incurred costs in filing the motion to dismiss on January 30, 2020, which was a necessary component of defending herself in this action.  Plaintiff appears to argue that costs related to the motion to dismiss or for summary judgment are not reasonable because "Defendant could have mitigated the cost of further motion practice had it simply sought

additional time to so move so that this [sanctions] motion could first be determined."  Pl.'s Opp. to Sanctions at 16.  This argument, however, ignores the fact that Plaintiff is solely to blame for filing an action with baseless allegations; that the Federal Rules of Civil Procedure set the deadlines that a litigant, like Defendant, must follow; and that Defendant had already requested one extension before filing the motion to dismiss, *see* Dkt. 21.  Because Plaintiff chose not to withdraw the action during the 21 days afforded to him by Rule 11, Defendant was forced to file the motions for sanctions and to dismiss.  *See Galin*, 283 F. Supp. 3d at 204 ("[T]he appropriate sanction is requiring [the plaintiff] and his counsel, jointly and severally, to reimburse [the defendant] for his reasonable attorney's fees and other expenses associated with briefing the motion for summary judgment and the Rule 11 motion.").

The Court will not, however, award Defendant costs for "removing references to this baseless claim from the various internet sites where such references are found."  Def.'s Mot. for Sanctions at 24.  First, it appears that Defendant has withdrawn her request for these costs.  In her reply brief, although she still explicitly requests attorney's fees and costs, she does not mention costs for removing references to this action online and states only that she "leaves to the Court's sound discretion whether additional sanctions against plaintiff also are merited on this record."  Def.'s Reply for Sanctions at 10.  In any event, Defendant has not provided any legal support for granting an award to that effect, the Court declines to grant them.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint is dismissed on jurisdictional grounds, and the action is dismissed without prejudice.  *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").  Defendant's motion for sanctions is granted, and Plaintiff is

ordered to pay Defendant's attorney's fees and costs incurred in defending herself in this action as of October 11, 2019.  Defendant's attorney is directed to submit an affidavit setting forth the total hours spent and legal services rendered in connection with this action, as well as counsel's hourly fee, no later than July 28, 2020.  The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 22 and 27 and to close this case.

SO ORDERED.

Dated:     July 21, 2020
           New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge

26