```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 01/06/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REFAEL KLEIN,

                Plaintiff,

           v.

STACEY R. B. AICHER,

                Defendant.

No. 19-CV-9172

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    In July 2020, this Court imposed Rule 11 sanctions against Plaintiff Refael Klein and in May 2021 held him in civil contempt for failing to pay those sanctions. Klein has now filed a Rule 60(b) motion seeking relief from the Court's judgment, claiming legal error and newly discovered evidence. For the reasons that follow, the motion is denied.

## BACKGROUND[1]

    In 2018, prior to the filing of this case, Klein was engaged in litigation with Defendant Stacey Aicher's husband, John Aicher, in which he was seeking to recoup a ten-year-old debt (the "Debtor Proceeding"). Compl. ¶¶ 2, 21. In June of 2019, Klein's counsel, who represented Klein in both actions, requested that John Aicher's counsel in the Debtor Proceeding consent to an extension on the "grounds of medical necessity." *Id.* ¶ 23. John Aicher's counsel did not consent because Klein's "purported medical condition was not emergent." *Id.* ¶ 26.

    According to Klein, based on this conversation he assumed that John Aicher's spouse, Defendant Stacey Aicher, had improperly accessed his medical records through a shared database called Healthix

---

[1] The Court presumes the parties' familiarity with the facts and procedural history previously summarized in its opinion dismissing the complaint and awarding Rule 11 sanctions, *Klein v. Aicher*, No. 19-CV-9172 (RA), 2020 WL 4194823 (S.D.N.Y. July 21, 2020) (Dkt. 74) ("July 2020 Opinion"), and its subsequent opinion holding Klein in contempt, Dkt. 104 ("May 2021 Opinion").

at Catholic Health Services of Long Island ("CHS"), where she worked in the legal department. *See id.* ¶¶ 3–4. In August 2019, Klein's counsel, William Kerr, wrote a demand letter to Stacey Aicher, alleging that she and her husband had "conspired to violate the Health Insurance Portability Act of 1996 (as amended) for their own personal gain." *See* Dkt. 28 ("Aicher Decl.") Ex. B; *see also* Aicher Decl. Ex. A. Klein offered to release any claims against Stacey Aicher if John Aicher would voluntarily dismiss the Debtor Proceeding, and included with his demand a proposed settlement agreement to that effect. Aicher Decl. Exs. A–B. After receiving the letter, Aicher reported the alleged violation to CHS, which conducted an investigation and found she had not accessed any patient medical records. *See* Aicher Decl. ¶ 26; O'Brien Decl. ¶¶ 4–8. Aicher, viewing the demand letter as "an unethical extortion plot," did not respond to it. Aicher Decl. ¶ 23. Klein's attorney sent another letter to her office, again attaching a settlement agreement and also attaching a proposed complaint. Arch Decl. Ex. C. This letter gave Aicher three days to reply; if she failed to do so, Klein stated he would file "a complaint in the Southern District for malpractice and breach of fiduciary duty." *See id.*

Aicher did not respond to the second demand letter, nor did she respond to two subsequent emails seeking dismissal of the Debtor Proceeding in exchange for a release of Klein's alleged claims. *See* Aicher Decl. Exs. C–E. Klein then followed through on his threat, and filed a complaint against Stacey Aicher in October 2019. The complaint alleges, "upon information and belief," that she had accessed Klein's medical records without his permission, "betray[ing] the basics tenets of professional conduct in both the legal and medical professions," and did so in order to "expedite her husband's litigation." Compl. ¶ 6. After the complaint was filed, Aicher's counsel presented Klein's counsel with a letter detailing the factual inadequacies of the complaint. *See* Aicher Decl. Ex. F ("October 11, 2019 letter"). The letter explained that the factual premises of the complaint were "demonstrably false," *id.* at 1, as Aicher never had direct or indirect access to "any health record database, or any patient's health records," *id.* at 2. The letter also explained that her employer had conducted an investigation and determined the

alleged "HIPAA violation was baseless." *Id.* The October 11, 2019 letter warned that Aicher would pursue Rule 11 sanctions if Klein did not withdraw the complaint. *Id.* at 1. Despite numerous communications between Klein and Aicher's counsel, Klein refused to withdraw the complaint in October 2019. *See* D'Antonio Decl. ¶¶ 15–38 . Klein's counsel was served with the Rule 11 sanctions motion on December 19, 2019, but Klein again failed to withdraw the complaint. *See* Dkt. 31.

On July 21, 2020, the Court granted Aicher's motion to dismiss the complaint, and her motion for Rule 11 sanctions against Klein. *Klein v. Aicher*, No. 19-CV-9172 (RA), 2020 WL 4194823 (S.D.N.Y. July 21, 2020) (Dkt. 74), *appeal withdrawn*, No. 20-2775, 2020 WL 8575591 (2d Cir. Oct. 29, 2020) ("July 2020 Opinion"). The Court held that an award of attorney's fees incurred after Klein received the October 11, 2019 letter was "appropriate in light of the tenuous factual basis on which the complaint was filed." *Id.* at *9. After reviewing the billing records of Aicher's counsel, the Court imposed $74,160 in sanctions.

Klein failed to pay the court-ordered sanctions. On September 25, 2020, Aicher filed her first motion to compel. The Court granted her motion, and ordered Klein to make payment by October 6. Dkt. 84. He did not do so. After another letter requesting an extension, the Court granted Klein an additional two-weeks to pay the award. Dkt. 88. Klein still refused to pay the award, and instead filed another letter objecting to the award and requesting additional time to find a new attorney. Dkt. 89. At that point, Aicher filed a motion to hold Klein in contempt. In response to the contempt motion, Klein argued, for the first time, that he was financially unable to pay the sanctions. On May 14, 2021, the Court held that Klein had not demonstrated an inability to pay, held him in civil contempt, and ordered that he pay additional sanctions. Dkt. 104 ("May 2021 Order").

On July 9, 2021, Klein, with new counsel, filed the instant motion for relief from judgment pursuant to Rule 60(b). Dkt. 110. Aicher filed an opposition on July 30, 2021, Dkt. 113 ("Def.'s Opp."), and on August 11, 2021, Klein filed a reply, Dkt. 117 ("Pl.'s Reply").

3

**LEGAL STANDARD**

Rule 60(b) of the Federal Rules of Civil Procedure authorizes a district court to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief."

Fed. R. Civ. P. 60(b)(1)–(6). The rule "strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).[2] "A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). "The burden is on the moving party to demonstrate that it is entitled to relief, and courts generally require that the evidence in support of the motion to vacate a final judgment be highly convincing." *Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017). Moreover, the rule "may not be used as a substitute for a timely appeal," *Nemaizer*, 793 F.2d at 61, or "to relitigate issues already decided," *Maldonado v. Local 803 I.B. of T. Health & Welfare Fund*, 490 F. App'x 405, 406 (2d Cir. 2013). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

## DISCUSSION

Klein's motion seeks relief based on legal mistake under Rule 60(b)(1) and newly discovered evidence under Rule 60(b)(2).[3]  The Court will address each in turn.

## I.     Rule 60(b)(1)

Klein contends relief is warranted under Rule 60(b)(1) due to three substantive errors in the July 2020 Opinion.  Plaintiff's motion, however, was filed after his time to appeal had expired, and is therefore untimely.  Even if the Court exercised its discretion to consider the motion, it would still fail on the merits.

### A.     Klein's Rule 60(b)(1) Motion is Untimely

Motions under Rule 60(b)(1) must be made "within a reasonable time," and any motion pursuant to Rule 60(b)(1), (2), or (3) must be made no later than one year from the entry of judgment.  *See* Fed. R. Civ. P. 60(c).  In addition to this "absolute" one-year period, Rule 60(b)(1) motions "based on district court mistakes are generally deemed untimely if made after the deadline for filing a notice of appeal." *See Niederland v. Chase*, 425 F. App'x 10, 12 (2d Cir. 2011) (citing *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003)); *see also Tineo v. Heath*, No. 09-CV-3357 (SJF), 2014 WL 4437466, at *2 (E.D.N.Y. Sept. 8, 2014) (collecting cases).  This timeliness standard prevents a Rule 60(b)(1) motion from "becoming a vehicle to assert an otherwise time-barred appeal."  *Niederland*, 425 F. App'x at 12; *see also Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964).

Here, the opinion and order was issued on July 21, 2020 and the judgment issued the next day. Dkts. 74, 75.  Civil litigants have thirty days to appeal from a final order.  *See* 28 U.S.C. § 2107(a).

---

[3] Plaintiff references Rule 60(b)(6) in his reply brief, but relief under this "catchall" provision is not warranted here, where the issues raised are squarely within the enumerated sections of Rule 60(b).  *Wright v. Poole*, 81 F. Supp. 3d 280, 290–91 (S.D.N.Y. 2014) ("Because the ground under which Petitioner seeks relief is encompassed by the more specific Rule 60(b)(1), Petitioner is not permitted to seek relief under Rule 60(b)(6) and avoid the time limit attached to Rule 60(b)(1) motions."); *see also PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 898 (2d Cir. 1983) ("Rule 60(b)(6) is a broadly drafted 'umbrella provision,' which must be read in conjunction with the other sections of that Rule, and is applicable only where the more specific provisions do not apply.").

Klein's attorney filed a timely notice of appeal on August 20, 2020. Dkt. 78. On August 31, 2020, Klein sent a letter indicating that he was unable to contact his attorney and was effectively proceeding *pro se*. Dkt. 79. On October 15, 2020, the Second Circuit filed an order stating that the deadline for Klein to file a brief and required appendix had passed and the case was in default. No. 20-2775, Dkt. 24. The order permitted Klein to remedy the deficiency within two weeks, or else the appeal would be dismissed. *Id.* Two weeks later, Klein submitted a joint Stipulation of Voluntary Dismissal, signed by his counsel, which withdrew the appeal with prejudice. No. 20-2775, Dkt. 26. This stipulation was "so ordered," and a mandate was issued, returning jurisdiction to this Court. No. 20-2775, Dkt. 32. Klein's application to file a Rule 60(b) motion was submitted on June 8, 2021, almost ten months after his initial appeal was timely filed. Dkt. 108.

      The motion here is untimely under the Second Circuit's preventative bar. "While many of the cases addressing the timeliness of Rule 60(b)(1) motions arose in situations where a party moving for relief under that rule failed to file a timely notice of appeal, the reasoning of those cases applies *a fortiori* where a litigant has made the decision to challenge a district court's order by filing an appeal." *Peterson v. Islamic Republic of Iran*, No. 10-CV-4518 (KBF), 2017 WL 10299580, at *26 (S.D.N.Y. Dec. 6, 2017), *report and recommendation adopted*, No. 10-CV-4518 (KBF), 2018 WL 3019878 (S.D.N.Y. June 18, 2018). Like a party who has allowed its appeals period to expire, Klein is attempting to use Rule 60(b)(1) to litigate issues that should have been raised on the appeal he filed but then withdrew. To allow such a motion now would "defeat" the Second Circuit's preventative bar. *Niederland*, 425 F. App'x at 13.

      In his reply brief, Klein requests that the Court exercise its discretion to consider his untimely motion. While the preventative bar is not "absolute," these circumstances do not warrant a discretionary extension. Klein argues that any untimeliness should be excused because he was frequently unable to contact his attorney, Mr. Kerr, who was experiencing a "serious illness in 2020 and was unable to render

6

assistance as counsel in this matter, including with respect to filing any motion for reconsideration within thirty (30) days of the entry of the July Orders." Pl.'s Reply at 4. From August to October of 2020, Klein filed multiple letters to the same effect—that he was unable to reach Kerr by email, phone, or text message. *See* Dkt. 79 (*pro se* letter, August 2020); Dkt. 85 (*pro se* letter, September 2020); Dkt. 89 (*pro se* letter, October 2020). But as discussed above, the Court addressed each of these letters in turn, and granted Klein two extensions to pay the sanctions award. *See* Dkts. 84, 88.

Moreover, despite the alleged lack of communication between Klein and Kerr, Kerr did take a number of actions between August and November of 2020. In August 2020, he filed a notice of appeal. Dkt. 78. In October 2020, he withdrew the same appeal. No. 20-2775, Dkt. 26. A few weeks later, on November 4, 2020, Kerr filed, on behalf of Klein, an opposition to Aicher's then-pending motion to hold Klein in contempt, which included declarations from both Kerr and Klein. Dkts. 94–96. Kerr also promptly requested leave to file a sur-reply, and filed an additional declaration of Klein as a sur-reply four days later. Dkts. 101, 103. Ultimately, Kerr was replaced by Klein's current counsel, who was, at that time, purportedly unable to contact Kerr regarding the status of this case. *See* Dkt. 108.

Notwithstanding the alleged lapses in communication between Kerr and his client, Klein has failed to demonstrate he was unable to file his Rule 60(b) motion until June 2021. If Klein had filed the Rule 60(b) motion in November, when Kerr filed the opposition brief, the Court may have exercised its discretion to hear the motion given Klein's reported difficulties in reaching Kerr. But Klein did not file in November 2020—he only requested to file this Rule 60(b) months later, in June 2021. Assuming *arguendo* that Klein was effectively *pro se* from August 2020 onward, the law is clear that he was still required to comply with the procedural rules. *See Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118, 120 n.3 (2d Cir. 2013); *see also Sheet Metal Workers' Nat'l Pension Fund v. Amodeo*, No. 09-CV-0121

(SJF)(ARL), 2016 WL 3080807, at *4, *20 (E.D.N.Y. May 27, 2016) (finding Rule 60(b)(1) motion was untimely where Plaintiff was *pro se* for several months and later retained counsel).[4]

Accordingly, Klein's motion for relief from judgment under Rule 60(b)(1) is untimely.

### B.   Klein's Rule 60(b)(1) Motion Fails on the Merits

Even if the Court were to exercise its discretion to consider Klein's motion under Rule 60(b)(1), it would still fail on the merits. "Rule 60(b)(1) is available for a district court to correct legal errors, such as when the judge has made a substantive mistake of law or fact." *Rai v. WB Imico Lexington Fee, LLC*, No. 09-CV-9586 (PGG), 2017 WL 4350567, at *2 (S.D.N.Y. June 28, 2017). Consistent with the Second Circuit's warning that Rule 60(b) motions must not become a means to assert otherwise time-barred appeals, *Niederland*, 425 F. App'x at 12, such motions "may not be used to advance new facts, issues or arguments not previously presented to the Court, [or] as a vehicle for relitigating issues already decided by the Court." *Rice v. Musee Lingerie, LLC*, No. 18-CV-9130 (AJN), 2019 WL 6619491, at *1 (S.D.N.Y. Dec. 5, 2019). Klein's first two contentions—that the Court improperly "fashioned [its] sanction as a measure of fully compensating Ms. Aicher instead of serving Rule 11's deterrent purpose," *see* Dkt. 111 at 1 ("Pl.'s Mem."), and that the award of attorney's fees was excessive—fail because they raise arguments the Court has previously considered and rejected. His third grounds for reconsideration, that the Court did not consider his financial circumstances, fails because it advances a new argument that was not before the Court in the initial motion.

---

[4] In *Colucci*, the Second Circuit held that a *pro se* litigant's Rule 60(b)(1) motion was "time barred" because it was filed after the "time that would be permitted for an appeal of the judgment." 531 F. App'x at 120 n.3. The Court further explained that "although Colucci filed a timely notice of appeal from the District Court's final judgment on April 28, 2011, proceeding *pro se*, this Court dismissed her appeal roughly six months later for failure to comply with an order requiring her to obtain assistance of counsel. Five months after that dismissal, Colucci filed her motion for Rule 60(b)(1) relief, claiming legal error, as an apparent attempt to circumvent the dismissal of her appeal." *Id.*

1. **The Court Properly Assessed Deterrence in Awarding Sanctions**

Klein states that the "Court erred in not considering whether such sanction was sufficient, but no greater than necessary, to deter comparable conduct," *id.* at 9, and overlooked controlling case law by failing to make "findings of the sort required by the Second Circuit in *Eastway* [*II*] and related Second Circuit case law." Pl.'s Reply at 7.

In its July 2020 Opinion, the Court explained the standard for determining an appropriate sanctions award as follows:

> Upon a determination that sanctions are appropriate, **the award "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated."** Fed. R. Civ. P. 11(c)(4). "[I]f imposed on motion **and warranted for effective deterrence**, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation" is permissible. *Id.*

*Klein*, 2020 WL 4194823, at *8 (emphasis added). After having determined that sanctions were warranted, the Court turned specifically to "what sanctions would be appropriate" under Rule 11. *Id.* at *12. In so doing, the Court cited *Eastway I*, and concluded that an award of attorney's fees was "properly tailored to deter future conduct by Plaintiff and others who are similarly situated." *Id.* Deterrence was thus central to the Court's consideration of the proper award of sanctions.

Klein also argues that the award of attorney's fees was unreasonable and summarizes the law as containing a "plethora of binding precedent that limits this Court's ability to award full attorneys' fees and costs." Pl.'s Reply at 2–3. Not so. Consistent with Rule 11 jurisprudence, the imposition of Rule 11 sanctions, including the amount, is left to the sound discretion of the district court. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Further, even when a district court finds a violation of Rule 11, the decision whether to impose a sanction for a Rule 11(b) violation is committed to the district court's discretion."); *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) ("District courts are given broad discretion in tailoring appropriate and reasonable sanctions under Rule 11."); *Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 15

(2d Cir. 2010) ("Where a district court concludes that a monetary award is appropriate, its broad discretion extends to determining the amount of the award."); *see also* Fed. R. Civ. P. 11, Advisory Committee's Notes to 1993 Amendment ("The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons."). While Klein cites to a number of cases in which courts exercised their discretion to award partial attorney's fees, none of those cases demonstrate that this Court acted outside the bounds of its broad discretion in this case. Here, the Court determined that awarding attorney's fees incurred after October 11, 2019—when Klein received notice that his claims were meritless—was "reasonable and properly tailored to deter future conduct by Plaintiff and others who are similarly situated." *Klein*, 2020 WL 4194823, at *12.

The award of attorney's fees was necessary to deter Klein, and others like him, from abusing the legal system. Klein repeatedly threatened instigation of this baseless lawsuit to coerce a settlement in a separate action brought against Klein by Defendant Aicher's spouse, and when those demands were rejected, he followed through on his threat by filing this action. Aicher Decl. Exs. A–E. Furthermore, the award was limited to only those fees incurred after Klein was informed by Aicher's letter that his allegations were wholly without merit. *See Klein*, 2020 WL 4194823, at *12. Klein's coercive pursuit of an unsupportable claim after that point warranted imposition of sanctions, and the award of attorney's fees was necessary to deter future conduct by both Klein and others similarly situated. Klein protests the sanction of attorney's fees because those fees are substantial, but it is precisely the high cost of litigation, in addition to damage to her personal and professional reputation, that Klein wielded as leverage against Aicher. The award of attorney's fees here was thus necessary to deter any future conduct of this sort, and the Court's exercise of its discretion to award the sanctions it did was proper.

### 2. The Court's Award of Attorney's Fees was Not Excessive

Klein next argues that the amount ($74,160) of attorney's fees was excessive because there was no discovery, and his case did not present any novel or complex issues.

After the July 2020 order, Defendant's counsel submitted a detailed record of the hours billed in this case and each attorney's rates. The Court carefully reviewed this billing record and concluded that "the amount of time …and the[] hourly rates [were] reasonable." Dkt. 77 at 2. Klein does not cite any evidence or law to suggest that the Court's assessment of the billing record was erroneous. He merely restates his position that the award is too high given the scope of the litigation—an argument made and rejected in his previous motions. *See Pena v. United States*, 859 F. Supp. 2d 693, 697 (S.D.N.Y. 2012) ("Rule 60 does not provide a movant an additional opportunity to make arguments or attempt to win a point already carefully analyzed and justifiably disposed."). Accordingly, the award of $74,160 was a proper exercise of the Court's discretion.

### 3. The Court Need Not Consider Klein's Financial Circumstances, Which Were Not Raised in the First Instance

Finally, Klein argues that the Court should have considered his financial circumstances in connection with the Rule 11 motion. As stated above, Klein did not raise this argument until after he refused to pay the sanctions. Because Rule 60(b)(1) motions may not be employed to assert time-barred appeals, Klein may not now raise new arguments "that [he] failed to raise in the underlying motion." *Devi v. Silva*, 861 F. Supp. 2d 135, 143 (S.D.N.Y. 2012); *see also Rice*, 2019 WL 6619491, at *2; *Sheet Metal Workers' Nat'l Pension Fund*, 2016 WL 3080807, at *17 (collecting cases).

Klein did not mention an inability to pay or submit evidence regarding his financial circumstances in connection with the sanctions motion, and his ability to pay was thus not considered at that time. At least one court has held that a failure to present evidence demonstrating an inability to pay supports a conclusion that there is no financial impediment. *See Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG*, No. 04-CV-3600 (SWK), 2005

WL 3099592, at *8 (S.D.N.Y. Nov. 17, 2005).  Even if, however, the Second Circuit's precedent required the Court to, *sua sponte*, request financial documents from Klein, the Court's subsequent evaluation of his financial circumstances has confirmed that no relief is warranted.  *See Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992) ("[A court] must take into account the financial circumstances of the [sanctioned party]").

After refusing to pay the sanctions, Klein presented evidence of his financial circumstances as a defense to Aicher's contempt motion.  In that context, the Court held that the evidence presented was insufficient, as Klein failed to establish that he was "clearly, plainly, and unmistakably" unable to pay.  May 2021 Opinion at 5.  Klein submitted two pieces of evidence regarding his financial circumstances: one screenshot of his checking account balance and one screenshot of his mortgage balance.  Dkts. 100-1, 100-2.  He also submitted two declarations.  Dkts. 100, 103.  This evidence was unavailing then, as it is now.  The images provided reveal little about Klein's overall financial circumstances; they do not show account history, income, or cashflow, but merely capture the balance of a bank account and mortgage at a time of Klein's choosing.  Furthermore, given Klein's self-serving conduct and averments throughout this litigation, *see* May 2021 Opinion at 6 ("The Court is not inclined to take Klein on his word."), the unsubstantiated representations in his declarations are entitled to little weight, *see Bowler v. U.S. I.N.S.*, 901 F. Supp. 597, 606 (S.D.N.Y. 1995) (Sotomayor, J.).  There is thus no basis to conclude Klein's financial circumstances warrant a reduction in the sanctions award.

Accordingly, even if Klein had raised this argument initially, and a reconsideration of his financial circumstances were warranted, the Court still would not have exercised its discretion to reduce the sanctions amount.

## II.     Rule 60(b)(2)

Klein also argues that a consent form he signed in 2015 ("Consent Form") at a CHS affiliate constitutes newly discovered evidence under Rule 60(b)(2). Klein alleges the form is significant because it is evidence that his medical information *could* have been improperly disclosed by CHS via Healthix, and demonstrates that CHS was negligent in its maintenance of his medical information. Pl.'s Mem. at 15.

Rule 60(b)(2) provides for relief from a previous judgment where a court is presented with "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). A party seeking relief from judgment under Rule 60(b)(2) "has an onerous standard to meet." *Int'l Bhd. of Teamsters*, 247 F.3d at 392. As the Second Circuit stated in *Mirlis v. Greer*:

> The movant must demonstrate that (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

952 F.3d 36, 50 (2d Cir. 2020), *cert. denied*, 141 S. Ct. 1265 (2021) (quoting *Int'l Bhd. of Teamsters*, 247 F.3d at 392).

Again, assuming *arguendo* that other conditions were met, the evidence raised by Klein would not have changed the outcome. Klein contends the evidence would have bolstered his opposition to the Rule 11 motion in two respects. First, he asserts that the Consent Form "provides reasonable grounds for Mr. Klein to allege that his health information was disclosed via Healthix without his authorization," and those grounds would have "served as a mitigating factor" in the Court's consideration of whether his complaint was unfounded. Pl.'s Mem. at 15. Second, he argues that the Court relied on the Declaration of Tara O'Brien, an Information Security Operations Manager at CHS, in determining the

13

claim was baseless, and that the omission of a discussion of this form undermines her credibility. *See id.* at 16–17.

First, the Consent Form would not have strengthened Klein's position in opposing the sanctions motion. Not only does the Consent Form fail to provide "reasonable grounds" to conclude Klein's information could have been disclosed via Healthix, it further fails to connect that disclosure to Stacey Aicher. The discovery of a form that indicates Klein refused to consent to CHS accessing his information from Healthix has no bearing on the complaint, which alleges that Stacey Aicher improperly accessed his medical records. This deficiency was noted in the July 2020 Opinion: "As previously discussed, the mere fact that Defendant was employed by a hospital that shared an electronic records system with another hospital is insufficient to reasonably allege that Defendant had access to Plaintiff's medical information, **let alone actually accessed Plaintiff's records and shared it with Mr. Aicher's counsel**." *Klein*, 2020 WL 4194823, at *10 (emphasis added). In connection with this motion, Klein argues that "if the Consent Form was not filed, then the safeguards would not block access. . . . [I]t is probative evidence that touches upon the central issues in dispute in this case, Ms. Aicher and CHS . . . could have and should have demonstrated to the Court that Mr. Klein's denial of consent existed and was properly filed." Pl.'s Reply at 9. As an initial matter, the form does not demonstrate a lack of safeguards. Either way, however, the baseless allegations here did not concern whether CHS properly restricted its employees access to patient's medical records stored on the Healthix platform, but rather, whether Klein had any supportable basis to allege Stacey Aicher had improperly accessed his medical records. The discovery of the Consent Form does not alter the conclusive evidence—which was presented to Klein— that Stacey Aicher did not have access to any patient health records. Indeed, Klein himself obtained an Access Log that confirmed Aicher had not accessed his medical records. *See Klein*, 2020 WL 4194823, at *11 ("The Access Log thus demonstrates that Plaintiff's allegations are baseless and that he knew— or should have known—as much at the time."); *see also* O'Brien Decl. ¶¶ 12–22. The initial sanctions

14

were based, in part, on Klein's refusal to withdraw his complaint in light of the definitive evidence that his complaint was unsupportable, and those claims remain unsupportable with or without the Consent Form. The Consent Form thus does not change the Court's assessment of the complaint, nor would it have changed the Court's decision to impose Rule 11 sanctions.

The Court's reliance on the O'Brien's declaration is likewise unaffected by the addition of the Consent Form. O'Brien, who oversaw "system data security" and reviewed the alleged breaches of CHS system policies, stated that her audit revealed Aicher never had credentials to access patient records, and in fact, never accessed the patient records system. *Id.* ¶¶ 1–8. She explains that the Access Log obtained by Klein also demonstrated that no CHS user, including Aicher, accessed his records during the relevant time period. *Id.* ¶ 20 ("The Healthix Report log I reviewed demonstrates conclusively that at no point between January 1, 2019 and January 1, 2020 were this particular patient's electronic health records accessed by any CHS user, employee, agent, or representative, including but not limited to Stacey Aicher."). O'Brien's declaration presented clear documentary evidence that contradicted Klein's allegations, and this evidence is unchanged by the Consent Form. Accordingly, Klein has failed to demonstrate the Consent Form "probably would have changed the outcome," and his motion under Rule 60(b)(2) is thus denied. *Mirlis*, 952 F.3d at 50.[5]

---

[5] Aicher also argues that Klein failed to demonstrate he was justifiably ignorant of the Consent Form because he himself signed it. Def.'s Opp. at 15. In a declaration, Klein averred that due to the administration of morphine and his medical conditions, he has no memory or records of his treatment at Mercy Medical Center in 2015, and that he only learned of the emergency visit from the Declaration of Tara O'Brien. *See* Klein Decl. ¶¶ 11–13. The Court need not assess the veracity of Klein's claims regarding his memory or health, because even if he were justifiably ignorant of the Consent Form, the Rule 60(b)(2) motion would still fail for the reasons explained above.

15

## CONCLUSION

Relief from judgment under Rule 60(b) is reserved for showings of "exceptional circumstances." *Int'l Bhd. of Teamsters*, 247 F.3d at 391. As no such circumstances are present here, Klein's motion is denied in its entirety.

The Clerk of Court is directed to terminate the entry at docket number 110.

SO ORDERED.

Dated:   January 6, 2022
          New York, New York

                                        RONNIE ABRAMS
                                        United States District Judge